IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| JUNELLE HAUTH, | : | NO. C08-3025MWB |
| Plaintiff, | : | |
| v. | : | **PLAINTIFF'S OPENING BRIEF** |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | : | |
| | : | |
| Defendant. | | |

## TABLE OF CONTENTS

**Statement of Facts** ………………………………………………………….. 1

**Standard of Review** ………………………………………………………… 4

**Was Marvin Hauth given an adequate notice of his right to convert the group term life coverage to an individual policy?** ………………………… 6

**Incapacity warrants equitable tolling** …………………………………….. 10

**Conclusion** …………………………………………………………………. 11

## FACTS

Plaintiff, Junelle Hauth, is the widow of Marvin Hauth who died on May 18, 2006 due to pancreatic cancer. Marvin Hauth had been a long-term employee of MCI Worldcom Network Services, Inc. (hereinafter referred to as "MCI"). One of the benefits he received as an employee of MCI was a group life insurance policy issued to him by the Prudential Insurance Company of America. Marvin Hauth was diagnosed with pancreatic cancer on or about September 21, 2005 while employed full time by MCI. His last day of work with MCI was on October 8, 2005 after which he was on disability leave.

Marvin Hauth's pancreatic cancer was terminal. He underwent chemotherapy which resulted in persistent nausea and vomiting. He was examined by Robert Bloom, M.D. on March 20, 2006 who reported that Mr. Hauth "has daily emesis since January of 4-12 times a day." Concerning Marvin's mental status, Dr. Bloom reported "He endorses moderately severe difficulty concentrating, making decisions and using memory, but Junelle says they are all severely impaired." Dr. Bloom's report confirms a diminished mental capacity. (Record, pp. 25-26.)

On March 20, 2006, Dr. Xi-Moy reported that Marvin was using intravenous Dilaudid PCA for pain with continuous infusion and higher dosage upon demand. The side effects of Dilaudid are sedation, drowsiness, mental clouding, lethargy, impairment of mental and physical performance, depression, hallucinations and disorientation.

Marvin Hauth's employment was terminated by MCI on April 7, 2006. Prudential claims that at this time Marvin Hauth was given a notice of his right to convert his group life insurance coverage to an individual policy but failed to take the necessary steps to convert his group life insurance coverage to an individual policy. The administrative record, page 28, states that it is not known when the alleged notice was given nor does the administrative record disclose who gave the notice, the content of the notice or whether the notice was received. Marvin Hauth died on May 18, 2006, 41 days after his employment was terminated on April 7, 2006. Prudential has refused to pay the death benefit. Later, Prudential claimed that the notice was in a severance package. (Record, p. 34.) The administrative record upon which Prudential denied death benefits does not actually contain that document. The Record doesn't even suggest that the "notice" was actually reviewed by the individuals who denied the claim. The Record contains no evidence to rebut the denial of receipt of a legally sufficient notice of the right of conversion.

2

The group life insurance policy issued to him by The Prudential Insurance Company of America through his employer MCI Worldcom Network Services, Inc. provided:

# Employee Term Life Coverage

FOR YOU ONLY

A. DEATH BENEFIT WHILE A COVERED PERSON.

If you die while a Covered Person, the amount of your Employee Term Life Insurance under this Coverage is payable when Prudential receives written proof of death.

B. DEATH BENEFIT DURING CONVERSION PERIOD.

A death benefit is payable under this Section B if you die:

(1)     within 31 days after you cease to be a Covered Person; and

(2)     while entitled (under Section C) to convert your Employee Term Life Insurance under this Coverage to an individual contract.

The amount of the benefit is equal to the amount of Employee Term Life Insurance under this Coverage you were entitled to convert. It is payable even if you did not apply for conversion. It is payable when Prudential receives written proof of death.

C. CONVERSION PRIVILEGE.

If you cease to be insured for the Employee Term Life Insurance of the Group Contract for one of the reasons stated below, you may convert all or part of your insurance under this Coverage, which then ends, to an individual life insurance contract. Evidence of insurability is not required. The reasons are:

(1)     Your employment ends or you transfer out of a Covered Class.

(2)     All term life insurance of the Group Contract for your class ends by amendment or otherwise. But, on the date it ends, you must have been insured for five years for that insurance (or for that insurance and any Prudential rider or group contract replaced by that insurance).

Any such conversion Is subject to the rest of this Section C.

Availability: You must apply for the individual contract and pay the first premium by the later of:

(1)     the thirty-first day after you cease to be insured for the Employee Term Life Insurance; and

(2)     the fifteenth day after you have been given written notice of the conversion privilege. But, in no event may you convert the insurance to an individual contract if you do not apply for the contract and pay the first premium prior to the ninety-second day after you cease to be insured for the Employee Term Life Insurance.

Under Prudential's policy, the conversion period extends to the later of the 31st day after Marvin Hauth ceased to be an employee of MCI <u>and</u> the 15th day after he was given written notice of the conversion privilege but in no event more than the 92nd day after he ceased to be an employee. Marvin died on May 18, 2006, the 41st day after the termination of his employment, but within the 91-day conversion period. The policy provides that the death benefit is payable if Marvin died while entitled to convert the employee term life insurance to an individual contract. Prudential has refused to pay the death benefit.

## STANDARD OF REVIEW

The Prudential Insurance Company of America was both the underwriter of the group life insurance policy and the claims administrator. Prudential claimed the right, in its sole discretion, to interpret the terms of the group contract and to make factual findings and determine eligibility for benefits. There is an inherent conflict of interest between the plan administrator's fiduciary duty to the beneficiaries and its interest in reducing its own liability for payment of benefits. Prudential's decision to deny benefits is premised upon a factual finding that legally sufficient written notice of the right to convert the group policy to an individual life insurance policy was given to the beneficiary.

The manner in which Prudential made this determination was a substantial breach of its fiduciary duty as plan administrator. Prudential acknowledged "Lorette has indicated the insured was timely notified of the conversion option (although I don't have an exact date)." At the same page, Prudential states "The attorney maintains that the former insured was not notified of his conversion option." Prudential concludes "Law is not in a position to check facts. We must assume the insured was timely notified and was on STD and LTD as noted above, not on a 'leave

4

of absence' or 'terminated'." "Based on the facts as relayed to Law, there is still no coverage." (Record, p. 28.) Denial of benefits by the fiduciary upon "assumed facts" where an essential fact is disputed, without undertaking any inquiry into the actual circumstances, is a serious procedural irregularity.

Examination of the record will disclose no effort to determine whether an adequate notice of the right of conversion was ever actually sent to or received by Marvin Hauth. The record does not contain the alleged notice nor does it contain any proof of delivery of a legally sufficient notice. Prudential could not determine that any notice was given and received nor could it evaluate the legal sufficiency of the alleged notification. The record contains no evidence upon which Prudential could dispute Hauth's attorney's claims that the notice was never received and that Hauth was too ill and incapacitated to receive it or make any rational decision pertaining to it.

Based upon the inherent conflict of interest and these serious procedural irregularities, Prudential's decision is not entitled to review under the abuse of discretion standard. Under these circumstances, the court should determine what lesser standard should be applied. Alliant Techsystems, Inc. v. Marks, 465 F.3d 864 (8th Cir. 2006); Davolt v. Executive Committee of O'Reilly Automotive, 206 F.3d 806 (8th Cir. 2000); Woo v. Deluxe Corp., 144 F.3d 1157 (8th Cir. 1997); Armstrong v. Etna Life Ins. Co., 128 F.3d 1236 (8th Cir. 1997); Torgeson v. Unam Life Ins. Co., 466 F. Supp 2d 1096 (N.D. Iowa 2006); West v. Etna Life Ins. Co., 171 F.Supp.2d 856 (N.D. Iowa 2001). Even under the abuse of discretion standard of review, the decision cannot stand.

# WAS MARVIN HAUTH GIVEN AN ADEQUATE NOTICE OF HIS RIGHT TO CONVERT THE GROUP TERM LIFE COVERAGE TO AN INDIVIDUAL POLICY?

The administrative record upon which Prudential denied coverage does not contain evidence of who gave the notice, how the notice was given, what the notice contained and whether there is any record that Marvin Hauth received the notice. Mrs. Hauth will testify that to her knowledge, Marvin never received the written notice of the conversion privilege required by the policy. After Marvin's death, she never found such a notice among any of his belongings.

Where the group term life insurance policy provides that written notice of the right of conversion will be given to the insured, mere knowledge of a right to conversion is insufficient. This issue was litigated in the ERISA context in Canada Life Assurance Co. v. Estate of Lebowitz, 185 F.3rd 231 (4th Cir. 1999). In that decision, the Fourth Circuit noted that while ERISA may not have required the insurer to provide the beneficiary with written notice of his right of conversion of a group life insurance policy, the policy documents promised that such notice would be given. Therefore, the court would enforce that promise and require that the employee received adequate written notice.

Harvey Lebowitz was a senior partner of a law firm. He left the firm to take employment with another firm. Before he left the firm, he was informed, in an exit interview with the firm's human resources manager, that he would no longer be covered under their group insurance as of October 1, 1995 and that he had 30 days after that date to convert his group life insurance into an individual policy. The human resources manager further testified that she gave Lebowitz a blank Canada Life "Group Conversion Application" and told him that he needed to complete it and pay the necessary premium in order to exercise his right of conversion. The HR manager did provide Lebowitz with a written letter documenting his health insurance right of conversion as required

by COBRA but did not provide him with a similar letter concerning conversion of his group life insurance. Lebowitz died on November 4, 1995, 35 days after his employment with his old law firm ended.

Canada Life's policy extended the conversion period beyond the 30 days for an additional 60 days if the required notice was not given. Similarly, the group life policy issued by Prudential to Hauth extended the conversion period to 91 days if the written notice of the conversion privilege was not given.

Canada Life filed suit for a declaration that there was no obligation to pay the life insurance benefit to Lebowitz's estate. The Estate counterclaimed for payment of the $500,000 principle death benefit plus interest, etc. The district court granted summary judgment to the Estate. The Fourth Circuit affirmed. The Fourth Circuit held that the policy provision requiring written notice of the right to convert the group life insurance policy to an individual policy imposes an obligation to provide sufficient information. Neither the oral explanation of the conversion right at the exit interview nor the conversion application satisfied that requirement.

> We rule that adequate written notice here must be in writing and explicitly include: (1) when the group coverage will expire, (2) when the right of conversion will expire, (3) the procedure to follow in order to convert the group policy into an individual policy, and (4) the amount of premium required to complete conversion. Since the conversion application did not provide this minimal information, it did not constitute 'written notice' as required by the Policy.

Canada Life at 238.

The court concluded that absent evidence that the required proper written notice was received, the Estate was entitled to recover the death benefit.

The leading decision on the consequences from failure to give notice of the right to convert a group to an individual policy is DeVille v. Continental Assurance Company, 10

7
Case 3:08-cv-03025-MWB   Document 15   Filed 02/27/09   Page 7 of 12

A.D.2d 386, 199 N.Y.S.2d 876 (1960 aff'd 170 N.E.2d 457 (N.Y. 1960). DeVille was insured under a group plan and that gave him a 30-day period to convert the policy to an individual life insurance policy. He died 43 days after the conversion period ended. The policy was subject to a New York statute that required that notification be given of the conversion privilege and its duration. The statute further provided that the conversion right would exist for 15 days after notice was given. If the notice was not given at all or was delayed, the maximum conversion period would be 90 days. The court held that as the insurance company failed to give the notice of conversion privilege, the conversion privilege and coverage continued through the date of the insured's death so that the certificate-holder was insured at the time of the death under the terms of the policy when construed together with the New York statutory provisions.

Harris v. St. Christopher's Hospital for Children, 436 A.2d 203 (Pa. Super. 1981) also concerned an employee who was covered by a group life insurance policy through her employer. Upon termination of employment, she could convert her coverage to an individual policy by applying for and paying the premium within 31 days after termination. If she were to die within the period without exercising the conversion, she would be entitled to the death benefit. The Pennsylvania insurance statute required the company to give notice of the existence of the right of conversion at least 15 days prior to the expiration of the date of the conversion right. Failure or delay in giving the notice could extend the conversion period for an additional 60 days. No notice was given to the insured of her right to convert her policy. She died 71 days after termination of her employment without converting her policy. The court held that the contract of insurance will, if possible, be construed so as to protect the insured and any doubt will be resolved in her favor. The court held that her death during the additional statutory period gave

rise to a right to payment of the death benefit. The same ruling, under nearly identical facts, appears in Life Insurance Company of Arkansas v. Ashley, 824 S.W.2d 393 (Ark. 1992).

Unlike Canada Life and the present case, where the policy required written notice of the right to convert the group policy into an individual life insurance policy, Deville, Harris and Ashley involved state insurance regulatory statutes imposing a duty of notification giving rise to an extended conversion period. Federal courts have differed over whether or not such state insurance regulations are pre-empted by ERISA. That issue does not arise in the present case because Prudential's policy, like Canada Life's policy, required written notification of the conversion privilege and provided that failure to give the required notice would extend the conversion period beyond the time of Marvin Hauth's death.

All of these decisions require that the death benefits be paid if death occurs during the extended conversion period. Failure to give proper notice will extend the conversion period to include the date upon which Marvin Hauth died. Mere knowledge of a conversion right is not sufficient. Notice must be given that includes sufficient information so that the insured is adequately informed of the conversion right and how to exercise it. The proper standard for judging the sufficiency of the conversion notice is set out in Canada Life. In order for the notice to be adequate, it must be a written notice that explicitly includes: (1) when the group coverage will expire, (2) when the right of conversion will expire, (3) the procedure to follow in order to convert the group policy into an individual policy, and (4) the amount of premium required to complete conversion.

The administrative record upon which Prudential denied benefits is seriously lacking in evidence that such a notice was ever given to Marvin Hauth. Prudential assumes that a notice was given. Prudential refused to undertake any factual investigation. No notice was ever

9
Case 3:08-cv-03025-MWB   Document 15   Filed 02/27/09   Page 9 of 12

reviewed in the denial process. Prudential didn't know what, if any, information was contained in the alleged notice. No evidence of actual delivery was presented or examined. Marvin Hauth's incapacity to receive or act on a notice was disregarded. Upon this Administrative Record, Prudential's decision cannot be upheld. Mrs. Hauth is entitled to receive the death benefits owed under Prudential's policy.

## INCAPACITY WARRANTS EQUITABLE TOLLING

When Marvin Hauth's employment was terminated on April 7, 2006, he was in the last stages of terminal pancreatic cancer. He was incapacitated and incompetent. His employer was aware of his diagnosis and condition. There is inadequate evidence to establish that Marvin Hauth ever received a sufficient notice of his right to convert the group life insurance policy into an individual plan. Absent proof that the notice was sent and received, the conversion period was extended beyond the date of Marvin Hauth's death. Under the terms of the policy, his death within the conversion period entitles his beneficiary to payment of the death benefit.

Even if some notice were received by Marvin Hauth, the conversion period should have been equitably tolled, due to his incapacity, in order to permit a representative to be appointed to take action on behalf of him or his estate. Federal courts have applied equitable tolling in similar circumstance to allow recovery of life insurance benefits. Equitable tolling was applied in a similar context in Branch v. G. Bernd Co., 955 F.2d 1574 (11th Cir. 1992). Duane Bell terminated his employment with G. Bernd Co. He had 60 days following the termination to elect to continue his health insurance coverage. During that 60 day period, Bell was admitted to the hospital in a semi-comatose condition after an unknown gunman shot him several times. Bell was never able to complete a coverage continuance form before he died. Branch, the administrator of Bell's Estate, sought to elect to continue Bell's health coverage. Benefits were

denied and suit was filed. The 11th Circuit concluded that a beneficiary who is incapacitated during the conversion period does not receive the opportunity to make an informed decision within that period. The court read equitable tolling principles into COBRA, tolling the time period for conversion from the date of incapacitation until the date that the administrator is empowered to make the election. In Jefferson v. Reliance Standard Life Ins. Co., 818 F.Supp. 1523 (N.D. Fla. 1993) reversed without opinion 85 F.3d 642 (Cir. 11, 1996), the district court applied equitable tolling to a right to convert a group life insurance policy to an individual policy. The former employee became incompetent during the conversion period and his wife acted within a reasonable time to convert the life insurance policy. The same rule should be applied here.

## CONCLUSION

There are three issues to be decided:

(1) Was a notice of right to conversion sent to and received by Marvin Hauth? If not, the conversion period was extended beyond the date of Marvin Hauth's death and his wife is entitled to the death benefit.

(2) If a notice was received, did the notice contain all of the information required by Canada Life in order to be effective? If not, the conversion period was extended beyond the date of Marvin Hauth's death and his wife is entitled to the death benefit.

(3) Should the time for exercising the conversion privilege be equitably tolled because Marvin Hauth was incompetent, incapacitated and unable to exercise the conversion privilege? If so, the conversion period was extended beyond the date of Marvin Hauth's death and his wife is entitled to the death benefit.

11
Case 3:08-cv-03025-MWB   Document 15   Filed 02/27/09   Page 11 of 12

JOHNSON, KRAMER, GOOD, MULHOLLAND,
COCHRANE & DRISCOLL, P.L.C.

By: _____
    Neven J. Mulholland (000003895)
    809 Central Avenue, Suite 600
    P. O. Box 1396
    Fort Dodge, IA 50501
    Telephone:   (515) 573-2181
    Facsimile:   (515) 573-2548
    Neven.Mulholland@JohnsonLawIA.com

ATTORNEYS FOR PLAINTIFF

Copies to:

Dennis W. Johnson
Angela E. Dralle
801 Grand Avenue, Suite 3900
Des Moines, IA 50309

Timothy E. Branson
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498

---

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein in their respective addresses disclosed on the pleadings on __2-27__, 2009

By:  ☐ U.S. Mail    ☐ FAX
      ☐ Hand Delivered  ☐ Overnight Courier
      ☐ Federal Express  ☒ Other: electronic
Signature: _____