IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| JUNELLE HAUTH, | : | NO. C08-3025MWB |
| Plaintiff, | : | |
| v. | : | **PLAINTIFF'S REPLY BRIEF** |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | : | |
| Defendant. | : | |

## TABLE OF CONTENTS

The evidence is insufficient to support Prudential's determination. ..................... 1

Standard of Review ............................................................................. 9

Equitable tolling ................................................................................ 10

Conclusion ....................................................................................... 11

## THE EVIDENCE IS INSUFFICIENT TO SUPPORT PRUDENTIAL'S DETERMINATION

There is no substantial evidence in the administrative record to demonstrate that Marvin Hauth ever received written notice of his right to convert the group life policy to an individual policy. There is no substantial evidence that he ever received the information and forms necessary to make such a conversion. Prudential's administrative record does not contain even a copy of the conversion notice allegedly given to Marvin Hauth. Prudential seeks to avoid this lack of support for its decision denying death benefits by claiming that Junelle Hauth's attorney provided sufficient evidence that the conversion notification was given. Prudential does this by

referring to a June 20, 2006 letter that it received from Plaintiff's attorney, Neven J. Mulholland. Throughout that letter, Mr. Mulholland consistently states that Marvin Hauth did not receive either a written notice of right of conversion or the necessary documents and instructions to effectuate the conversion. On the first page of the letter, he states:

> As near as we can tell, on or about April 8, 2006, Marvin Hauth's life insurance policy with The Prudential Insurance Company of America through his employer apparently was terminated. Unfortunately, in spite of the policy terms indicating it could be converted within 31 days, Mr. Hauth did not receive notification that the policy had been canceled nor did he receive any conversion paperwork from either MCI/Verizon or The Prudential Insurance Company of America allowing him to convert the policy. (Record p. 13.)

On the second page, he states:

> In summary, neither MCI/Verizon or Prudential notified the Hauths that MCI/Verizon would no longer be paying premiums on said policy as of April 8, 2006. Furthermore, they did not receive notification that the policy had lapsed or of their rights to convert the policy. We are requesting that the policy immediately be reinstated and conversion privileges be extended so as to allow Junelle Hauth to make a claim for death benefits. (Record p. 14.)

Prudential claims that letter did include, as an enclosure, a Group Life Insurance Claim form provided and prepared by Carol Dunkel of MCI/Verizon. (Record pp. 3-6). That claim form does state, "Conversion Privilege Offered (if available) 04-08-2006." (Record p. 5). The claim form does not indicate how or in what manner the notice was given, whether the notice was oral or written, what form it took, how it was delivered, whether it was received, or whether it complied with the plan's provisions and contained sufficient information to permit the exercise of the option. These words from the claim form cannot sustain Prudential's denial of death benefits. There is no other evidence of the nature of the alleged notice, its content or its delivery.

The essential question in this dispute is, "What notice was actually given to Mr. Hauth of his right to convert?" Prudential has no answer.

Throughout the Administrative Record, Prudential acknowledges that there is a question of whether the required written notice was given. In its initial denial of the claim, Prudential restated Hauth's position, "... the former insured was not notified of his conversion option." (Record p. 16.)

In its final decision denying benefits, Prudential asserted that the insured was given a severance package by his employer on or about April 7, 2006 and that the package contained the conversion notice and information on the conversion process. (Record p. 34). The actual "severance package" allegedly containing the conversion notice and information on the conversion process has never been produced nor, apparently, ever reviewed by Prudential to confirm that the written notice required under the plan was provided. Based upon the Administrative Record before the court, Prudential's description of the severance package and its contents is pure speculation.

Mr. Mulholland's July 3, 2007 letter to Prudential continued to raise the issue of whether notice of the conversion had been given and denied that Marvin Hauth had ever received the necessary conversion notification and paperwork. He proceeded to argue that, even if that point were conceded, Mr. Hauth was not of sound mind to appreciate and understand the significance of any documentation notifying him that the group life policy would be terminated unless he took steps to convert it to an individual policy. (Record pp. 24-25.) Portions of the physician's reports were supplied to document Mr. Hauth's incompetence. (Record p. 25.)

Prudential's own internal document acknowledges Plaintiff's counsel's insistence that "the former insured was not notified of his conversion option" and in response states "<u>Law is not in a</u>

<u>position to check facts. We must assume the insured was timely notified</u> and was on STD and LTD as noted above, not on a 'leave of absence' or 'terminated'. [Underlining added.] (Record p. 28.)

Plaintiff submitted discovery requests to Prudential seeking evidence that a written conversion notice was sent to or received by Marvin Hauth. Plaintiff's Interrogatory No. 7 requested specific information concerning the conversion notification allegedly delivered to Marvin Hauth.

> INTERROGATORY NO. 7: With respect to the conversion of Marvin Hauth's group life insurance policy to an individual life insurance policy, state:
>
> (a) How Marvin Hauth was notified that he had the option to convert the group life insurance policy to an individual policy;
>
> (b) The date Marvin Hauth received the above notification;
>
> (c) The authority under which he was granted the option to convert the group life insurance policy to an individual policy;
>
> (d) The name, address, telephone number and job title or capacity of each person involved in notifying Marvin Hauth of the option to convert the group life insurance policy to an individual policy;
>
> (e) How each person listed above was involved;
>
> (f) The date Marvin Hauth actually received the notice of his option to convert the group life insurance policy to an individual policy; and
>
> (g) If you will do so without a motion to produce, attached a copy of any documents evidencing the receipt by Marvin Hauth of notice of his option to convert the group life insurance policy to an individual policy.
>
> ANSWER: See objections and response to Interrogatory Nos. 2-3. Prudential also objects to this Interrogatory because it seeks information not in the possession, custody or control of Prudential.

4

> In addition, this Interrogatory exceeds the number permitted by Fed. R. Civ. P. 33.

Prudential refused to provide any information concerning the alleged conversion notice. Rather, Prudential's Answer to Interrogatory No. 7 referenced its answers to Interrogatories Nos. 2 and 3 which contained Prudential's objections that the Interrogatory was inconsistent with the scope of discovery, was premature, overly broad, burdensome and vague, was served before the filing of the administrative record and sought information in the control of Mr. Hauth's former employer. Plaintiff's Request for Production No. 11 sought the documents evidencing receipt by Marvin Hauth of his option to convert the group life insurance policy. This request was objected to on the basis that it was inconsistent with the scope of discovery, was premature because it was served before the filing of the administrative record and vague.

Prudential's objections to discovery suggested that the Administrative Record would contain information concerning the notice of right of conversion. But, when the Administrative Record was filed, it did not contain a copy of the written notice of the right to convert the group life insurance policy to an individual policy that was alleged to have been given to Mr. Hauth. Apparently, Prudential has never been able to determine what actual written notice, if any, was provided to Marvin Hauth or whether the alleged notice was sufficient under the plan's requirements. The weakness of Prudential's position is demonstrated by its argument, at page 8 of its Memorandum:

> Prudential relied on the employer-signed claim form to find that notice was given to Mr. Hauth, which is eminently reasonable because it is the employer that provides such notice.

The disputed issue is whether the requirements of the plan were satisfied. Such reliance is unreasonable where this is the central issue in dispute.

5

Although Prudential claims discretion in interpreting the plan and deciding whether benefits are due to beneficiaries, it must exercise that discretion differently that exhibited here. In Metropolitan Life Ins. Co. v. Glenn, 128 S.Ct 2350, 2346, 171 L.Ed2d 299, the Supreme Court held insurer/plan administrators to a higher standard.

> For another, ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S.Ct. 948 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B).

Prudential's decision to deny death benefits and its review process did not meet this quality standard.

There was a disputed issue of fact over whether an adequate written notice was actually given to Marvin Hauth. Prudential denied benefits based on its factual determination that a "notice" was given by the employer. If the required written notice had been given, death benefits would be excluded under the plan because the time for conversion expired before Marvin's death. Prudential was required to establish this fact if it were to exclude benefits on that basis. "Under ERISA, an insurer bears the burden to prove facts supporting an exclusion of coverage." Fought v. UNUM Life Ins. Co., 379 F.ed 997, 1007 (10th Cir. 2004). "ERISA places the burden of proving an exclusion from coverage in an ERISA-regulated welfare plan on the plan administrator." Caffey v. UNUM Life Ins. Co., 302 F.3d 576, 580 (6th Cir. 2002). Prudential failed to carry its burden.

Prudential had a fiduciary duty to base its decision on proven facts, not on assumption and reliance on the employer fulfilling its duty under the plan. Prudential owed an obligation to make a complete inquiry as to what the employer actually did and to examine the alleged notice for compliance with the terms of the plan before denying death benefits. There is nothing in the record to document that a <u>written</u> notice of conversion rights was actually given to Mr. Hauth.

Mrs. Hauth cannot possibly produce evidence that the written conversion notice was not given. Yet, Prudential argues that she had a responsibility to submit "evidence regarding the employer's notice to Mr. Hauth of the conversion privilege." (Prudential's Memorandum, p. 5). The burden was on Prudential to prove that the written notice was given to justify is denial of benefits. <u>Fought</u>, *supra*. Prudential cannot produce evidence that the type of written notice required by the plan was actually given to Mr. Hauth. As plan administrator, Prudential was responsible to see that the plan was followed. Prudential could not fairly decide claims according to the terms of the plan[1] without making genuine inquiry into the facts upon which coverage under the plan depends. Prudential could not determine whether the conversion period had expired under the terms of the plan without additional inquiry into what type of notice, if any, was actually provided by the employer to Mr. Hauth. Under the terms of the plan, if the necessary written notice was not given, the time for applying for an individual contract was extended to 91 days following termination. Under those circumstances the death benefit must be paid because Mr. Hauth died while he was still entitled to convert the group plan to an individual life insurance policy. (Record p. 44).

Prudential suggests that the claim form's assertion that notice was given resolves the case. As illustrated by the decision in <u>Canada Life Assurance Co. v. Estate of Lebowitz</u>, 185 F.3rd 231 (4th Cir. 1999), the issue isn't "Was some notice given?" but "Was the required notice

---

[1] See footnote to Prudential's Memorandum, p. 7.

given?" In Hauth's case, the claim form asserts that some notice was given but doesn't document that the required written notice was given. Lebowitz had received an oral explanation that group life insurance would end and that he had 30 days after termination to convert his group life insurance into an individual policy. He was given a blank Canada Life "Group Conversion Application" and was told that he needed to complete it and pay the necessary premium in order to exercise his right of conversion. The Canada Life policy, provided under an ERISA plan, required written notice of the right of conversion. Like Hauth, Lebowitz died after the 31st day but within the extended conversion period as no written notice was given. The Fourth Circuit held that neither the oral explanation of the conversion right at the exit interview nor the conversion application satisfied that requirement of the policy.

> We rule that adequate written notice here must be in writing and explicitly include: (1) when the group coverage will expire, (2) when the right of conversion will expire, (3) the procedure to follow in order to convert the group policy into an individual policy, and (4) the amount of premium required to complete conversion. Since the conversion application did not provide this minimal information, it did not constitute 'written notice' as required by the Policy.

Canada Life at 238.

Absent evidence that the required proper written notice was received, the Lebowitz' estate was entitled to recover the death benefit. The same rule should apply here. Oral notice is insufficient. Written notice that doesn't reasonably inform the insured is also insufficient. Without any evidence of the content of the alleged notice, how can Prudential's denial of death benefits be upheld?

## STANDARD OF REVIEW

The deferential standard of review should be relaxed because of the inherent conflict of interest between Prudential's fiduciary duty as the plan administrator to the beneficiaries and its interest in reducing its own liability for payment of benefits. The Supreme Court recently restated its adherence to the rule that there is an inherent conflict is such cases that requires flexibility.

> Often the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket. We here decide that this dual role creates a conflict of interest; that a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case.

Metropolitan Life Ins. Co. v. Glenn, 128 S.Ct 2343, 2346, 171 L.Ed2d 299

The Administrative Record shows that Prudential undertook no factual investigation to determine whether a written notice of the conversion option, required by the plan, was actually delivered to Marvin Hauth. The "Severance Package" was never reviewed by Prudential. None of us know what the severance package was supposed to contain or whether all of its contents were delivered to Mr. Hauth. The alleged notice was never obtained or reviewed. Verizon's checking a box and inserting a date in the claim form does not satisfy the plan's requirement that written notification was given. (Record p. 5) Prudential made the crucial factual finding, that proper written notice was given, based upon assumption and upon reliance that the employer would carry out its responsibilities under the plan. It would have been more prudent to follow Ronald Reagan's signature phrase, "Trust, but verify." ["*doveryai, no proveryai*".] Prudential refused to make any real effort to verify its assumptions. The record contains no evidence that a written notice was ever given. This cavalier approach to deciding the factual issues in the appeal

constitutes the type of irregularity and breach of fiduciary duty that warrants a less deferential standard of review.

## EQUITABLE TOLLING

The doctrine of equitable tolling would only come into play if Marvin Hauth had actually been given written notice of his right to convert his life insurance. Mrs. Hauth has consistently denied that such notice was given to her husband. There is no substantial evidence in the Administrative Record to allow a determination that a notice that met the policy's requirements was given. But, if we assume that such a notice was given, the time for exercising the option should have been extended under the doctrine of equitable tolling. This doctrine is well settled in the Eighth Circuit. Gassler v. Bruton, 255 F.3d 492, 495 (8th Cir. 2001). Equitable tolling is appropriate where the circumstances that cause a plaintiff to miss a deadline are out of his hands." Heideman v. PFL, Inc., 904 F.2d 1262, 1266 (8th Cir.1990). The doctrine applies when extraordinary circumstances, beyond the plaintiff's control, prevent filing on time. Jihad v. Hvass, 267 F.3d 803, 805 (8th Cir.2001). Plaintiff has earlier cited Branch v. G. Bernd Co., 955 F.2d 1574 (11th Cir. 1992) and Jefferson v. Reliance Standard Life Ins. Co., 818 F.Supp. 1523 (N.D. Fla. 1993) reversed without opinion 85 F.3d 642 (Cir. 11, 1996), as decisions applying equitable tolling under similar facts. Prudential has cited only unpublished decisions to challenge the application of the doctrine. Plaintiff is not asking the court to change the terms of the group life insurance plan, only to prevent loss of benefits where the employer terminates a dying employee and the employee, due to circumstances beyond his control, has become incompetent to exercise the option to keep life insurance benefits for his dependents.

Hauth's circumstances were extraordinary. He was near death from pancreatic cancer. He was undergoing chemotherapy with significant complications. He suffered from depression. His ability to concentrate, use his memory and ability to make decisions was severely impaired. (Record p. 25). Prudential cannot dispute Mr. Hauth's medical and mental condition but points to a disability insurance form that he did complete to indicate that he had some ability. How he obtained the form[2] is not known. Assuming, as Prudential contends, that Mr. Hauth received notice of right to convert his group life insurance and the necessary instructions and forms; this act is stronger evidence of his incompetence. Knowing that he was dying, would a competent person apply for disability insurance and not keep his life insurance in force? That he was capable of filling out a form is not proof that he was competent to make decisions. The irrational act of a dying man in filling out a form to continue his disability insurance while failing to continue his life insurance (assuming he was notified of the option) indicates that his mental capacity was severely impaired. The effects of the pancreatic cancer were beyond Mr. Hauth's control. Equitable tolling would be properly applied in these circumstances.

## CONCLUSION

Prudential did not fulfill its fiduciary duty to fairly decide whether Mrs. Hauth was entitled to receive the death benefit under the plan. Prudential failed to obtain facts, documented in the Administrative Record, to permit a conclusion that Verizon actually delivered to Marvin Hauth the required written notification of his right to convert his group life insurance to an individual policy. Delivery of a legally sufficient notice, as required by the plan is a fact too important to be assumed by reliance upon the employer fulfilling its duty under the plan.

---

[2] This form, attached to the Affidavit of Timothy E. Branson, is not a part of the Administrative Record filed by Prudential in this case nor does it appear that Prudential ever relied upon the form in denying the claim.

Nothing less than a copy of the notice allegedly delivered, which would sufficiently inform the insured of the right and how to exercise the option, together with evidence of delivery was required. Because of the irregular way that Prudential handled the appeal, a relaxed standard of review should be applied. But, even under the most stringent standard of review, Prudential's denial of the death benefit cannot be upheld. Even if the required notice had been given, Mr. Hauth was so mentally incapacitated by cancer that the deadline for exercising the option should be equitably tolled. Plaintiff, Junelle Hauth, respectfully requests that the court reverse Prudential's decision and order that the death benefit be paid with interest.

JOHNSON, KRAMER, GOOD, MULHOLLAND,
COCHRANE & DRISCOLL, P.L.C.

By _____
Neven J. Mulholland (000003895)
809 Central Avenue – Suite 600
P. O. Box 1396
Fort Dodge, IA 50501-1396
Telephone: 515-573-2181
Facsimile: 515-573-2548
Neven.Mulholland@JohnsonLawIA.com
ATTORNEYS FOR PLAINTIFF

Copies to:

Dennis W. Johnson
Angela E. Dralle
801 Grand Avenue, Suite 3900
Des Moines, IA 50309

Timothy E. Branson
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein in their respective addresses disclosed on the pleadings on ___6-1___, 2009.

By: ☐ U.S. Mail ☐ FAX
☐ Hand Delivered ☐ Overnight Courier
☐ Federal Express ☒ Other: electronic
Signature: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| JUNELLE HAUTH, | ) | |
|---|---|---|
| Plaintiff, | ) | CASE NO. C08-3025MWB |
| v. | ) | |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | ) | **DEFENDANT'S ANSWERS TO INTERROGATORIES** |
| Defendant. | ) | |

TO: Plaintiff above-named and her counsel Neven J. Mulholland and JOHNSON, ERB, BICE, KRAMER, GOOD, MULHOLLAND & COCHRANE, P.L.C., 809 Central Avenue, P.O. Box 1396, Fort Dodge, IA 50501.

For its Answers to Plaintiff's Interrogatories, Defendant The Prudential Insurance Company of America ("Prudential") objects and states as follows:

**GENERAL OBJECTION**

Prudential objects to these Interrogatories to the extent they seek information and documents protected by the attorney-client privilege or the work-product doctrine.

**INTERROGATORY NO. 1:** State the name and address of the person answering these Interrogatories; and if any other individual furnished information necessary to answer the following Interrogatories, state the name and address of that person, together with the Interrogatory for which that person provided information.

**ANSWER:** Prudential objects to this Interrogatory because it is inconsistent with the scope of discovery in this ERISA administrative record case, because it is premature, having been served before filing and service of the administrative record, and to the extent it seeks information protected by the attorney-client privilege and work product doctrine. Subject to and without waiving these objections, Prudential states that these are its corporate answers, which are

1

expected to be verified by Vicki Angle, Senior Technical Claims Examiner.

**INTERROGATORY NO. 2:** Did Defendant issue a group life insurance policy which provided life insurance benefits for Marvin E. Hauth? If so, state:

(a) When the policy was issued;
(b) Where the policy was issued;
(c) The policy number;
(d) The manner in which the insured received the policy and/or summary of the life insurance benefits;
(e) The name, address, telephone number and job title or capacity at the time of issuance of the person who issued the policy;
(f) The name, address, telephone number and job title or capacity at the time of issuance of the person who authorized the policy;
(g) The name, address, telephone number and job title or capacity at the time of issuance of the person who witnessed the policy;
(h) The amount of life insurance benefits available to Marvin Hauth.

**ANSWER:** Prudential objects to this Interrogatory because it is inconsistent with the scope of discovery in this ERISA administrative record case, because it is premature, having been served before filing and service of the administrative record, because it is overly broad and unduly burdensome, and because it seeks information in the possession of Mr. Hauth's employers relating to its discharge of its statutory duties. Subject to and without waiving these objections, and in accordance with Fed. R. Civ. P. 33(d), Prudential produces herewith MCI WORLDCOM Network Services, Inc. Employee Term Life Coverage Booklet and Certificate of Coverage therein. The administrative record produced by Prudential includes the amount of Mr. Hauth's insurance coverage before termination.

**INTERROGATORY NO. 3:** Prior to the actual termination of the life insurance benefits under the policy referred to in your Answer to the preceding Interrogatory, did any representative of the Defendant have any contact with Marvin E. Hauth relating to said benefits? If so, for <u>each contact</u>, state:

(a) The date;
(b) The place;

2

(c) The form of contact;
(d) The name, address, telephone number and job title or capacity at the time of contact, of each person involved in the contact on behalf of the insurer;
(e) How each person listed in subparagraph (d) was involved;
(f) The name, address, telephone number and occupation of each other person present at the time of each contact;
(g) What was said and done by each person present at the time of contact; and
(h) The name, address, telephone number and job title or capacity at the time of contact of the person who initiated the contact.

**ANSWER:** Prudential objects to this Interrogatory because it is inconsistent with the scope of discovery in this ERISA administrative record case, because it is premature, having been served before filing and service of the administrative record, because it is overly broad and unduly burdensome, and because it is vague. Subject to and without these objections, Prudential refers Plaintiff to the administrative record produced in this matter.

**INTERROGATORY NO. 4:** Was any writing or other form of record made that evidences any of the contacts listed in the answer to the preceding Interrogatory? If so, state:

(a) The name, address, telephone number and occupation of the person who has custody of each such record;
(b) If you will do so without a motion to produce, attach a copy of each record to your Answers to these Interrogatories.

**ANSWER:** See objections and response to Interrogatory No. 3.

**INTERROGATORY NO. 5:** Were any agreements, documents, memoranda, reports or other writings prepared or drawn up as a result of any of the contacts referred to in the preceding Interrogatory? If so, for each writing, state:

(a) The date it was prepared;
(b) The reason for its preparation;
(c) The name, address, telephone number and job title or capacity at the time of preparation, of the person who prepared it;
(d) Describe the title and nature of the documents, including its substance;
(e) The name, address, telephone number and job title or capacity at the time of signing, of each person who signed it;
(f) If you will do so without a motion to produce, attach a copy of each record to your Answers to these Interrogatories.

ANSWER: See objections and response to Interrogatory No. 3.


**INTERROGATORY NO. 6:** Were any of the writings referred to in Answer to Interrogatory No. 5 submitted to Marvin Hauth? If so, for each such writing, state:

(a) Its identity;
(b) The date of its submission;
(c) The manner of its submission;
(d) The reason for its submission;
(e) The name, address, telephone number and job title or capacity at the time of the submission of the person who authorized its submission;
(f) The name, address, telephone number and job title or capacity at the time of the submission of the person who submitted it;
(g) The name, address, telephone number and job occupation of the person to whom it was submitted;
(h) If you will do so without a motion to produce, attached a copy of any documents evidencing the receipt by Marvin Hauth or his representative of any of the submissions listed above.

ANSWER: See objections and response to Interrogatory No. 3. In addition, this Interrogatory is objectionable because it exceeds the number permitted by Fed. R. Civ. P. 33.


**INTERROGATORY NO. 7:** With respect to the conversion of Marvin Hauth's group life insurance policy to an individual life insurance policy, state:

(a) How Marvin Hauth was notified that he had the option to convert the group life insurance policy to an individual policy;
(b) The date Marvin Hauth received the above notification;
(c) The authority under which he was granted the option to convert the group life insurance policy to an individual policy;
(d) The name, address, telephone number and job title or capacity of each person involved in notifying Marvin Hauth of the option to convert the group life insurance policy to an individual policy;
(e) How each person listed above was involved;
(f) The date Marvin Hauth actually received the notice of his option to convert the group life insurance policy to an individual policy; and
(g) If you will do so without a motion to produce, attached a copy of any documents evidencing the receipt by Marvin Hauth of notice of his option to convert the group life insurance policy to an individual policy.

ANSWER: See objections and response to Interrogatory Nos. 2-3. Prudential also

4

objects to this Interrogatory because it seeks information not in the possession, custody or control of Prudential. In addition, this Interrogatory exceeds the number permitted by Fed. R. Civ. P. 33.

**INTERROGATORY NO. 8:** With respect to the termination of Marvin Hauth's life insurance benefits under the policy referred to in your Answers to the preceding Interrogatories, state:

(a) The date his life insurance benefits were terminated;
(b) The authority under which his life insurance benefits were terminated;
(c) The name, address, telephone number and job title or capacity at the time of termination, of each person involved in its termination;
(d) How each person listed above was involved;
(e) The date Marvin Hauth became aware of the termination of his life insurance benefits; and
(g) If you will do so without a motion to produce, attached a copy of any documents evidencing the receipt by Marvin Hauth of notice that his life insurance benefits were being terminated.

**ANSWER:** See objections and response to Interrogatory Nos. 2-3. In addition, this Interrogatory exceeds the number permitted by Fed. R. Civ. P. 33.

**INTERROGATORY NO. 9:** State whether any agent or employee of Defendant was aware that Marvin Hauth was receiving short-term disability benefits due to his inability to work as a result of his medical condition. If so, state:

(a) The first date upon which any agent or employee became aware of Mr. Hauth's inability to work;
(b) The name, title and business address of the agent or employee to whom such notice was given;
(c) The name, title and business address of the agent or employee who processed Mr. Hauth's short-term disability claim;
(d) Whether Mr. Hauth's short-term disability claim was approved;
(e) The basis for approving Mr. Hauth's short-term disability claim;
(f) If you will do so without a motion to produce, attached a copy of any documents evidencing the decision by Defendant to approve Mr. Hauth's short-term disability claim.

**ANSWER:** Prudential objects to this Interrogatory because it is inconsistent with the

5

# VERIFICATION

To the best of my knowledge and information, the above interrogatory answers, which were prepared with the advice and assistance of counsel, are true and accurate.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA

By *Victoria Angle*
Victoria A. Angle

Its Senior Technical Claims Examiner

Subscribed and sworn to before me
this 8th day of January, 2009

*Bonnie A Goshin*
Notary Public

BONNIE A. GOSHIN
Notary Public, State of New Jersey
No. 2332312
Qualified in Essex County
Commission Expires August 3, 2010

STATE OF MINNESOTA )
                      ) SS          **AFFIDAVIT OF MAILING**
COUNTY OF HENNEPIN)

RE:   *Junelle Hauth v. The Prudential Insurance Company of America*
       Court File No. C08-3025MWB

     Linda Skwiera, being first duly sworn, on oath deposes and says that on the 11th day of January, 2009, she did deposit in the United States mail an envelope properly sealed and with postage prepaid thereon, addressed to:

Neven J. Mulholland, Esq.
Johnson, Erb, Bice, Kramer Good,
Mulholland & Cochrane, P.L.C.
809 Central Avenue
P.O. Box 1396
Fort Dodge, IA 50501

the last known address of said addressee, in which envelope she had first placed a true and correct copy of the attached:

- Defendant's Answers to Interrogatories and Defendant's Responses to Request for Production of Documents

                                              */s/ Linda Skwiera*
                                               Linda Skwiera

Subscribed and sworn to before me
this 11th day of January, 2009.

*/s/ Jean Ware*
Notary Public



JEAN M. WARE
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan 31, 2010