# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

JUNELLE HAUTH,

    Plaintiff,

vs.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,

    Defendant.

No. C08-3025-MWB

**MEMORANDUM OPINION AND ORDER REGARDING ACTION FOR JUDICIAL REVIEW OF ERISA BENEFITS DETERMINATION**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   *A. Authority For A Civil Action* . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   *B. Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   *C. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    This case concerns the plaintiff's request for judicial review of the denial of her claim for her husband's life insurance benefits under a group life insurance policy

governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiff's husband, Marvin Hauth, died shortly after his employment was terminated by his employer which had a group life policy in which he participated. The group life insurance policy terminated on Marvin's last work day but, under the terms of the policy, he was required to be given written notice of his right to convert his group policy to an individual life insurance policy. Marvin died forty-one days later without exercising his right of conversion. The plaintiff asserts that Marvin never received written notice of his right to conversion as guaranteed by the policy and that the defendant insurer and administrator for the group life insurance portion of the ERISA plan erroneously concluded that Marvin did receive such notice. Alternatively, the plaintiff contends that if Marvin did receive written notice of his right to conversion, at the time he received such notice he was incapable, due to his terminal medical condition, from making financial decisions and that his impairment stayed the period of election for conversion of the policy. The insurer, however, contends that its decision to deny life insurance benefits is supported by substantial evidence, so that it did not abuse its discretion in denying such benefits. The insurer also argues that the policy's conversion period is not subject to equitable tolling, but even if it were, there is insufficient evidence to support tolling. The case was submitted on a written record and briefs.

## I. INTRODUCTION

### A. *Factual Background*

Plaintiff Junelle Hauth is the widow of Marvin Hauth. Marvin was a long time employee of Verizon Business ("Verizon") and its predecessor, MCI. As an employee of

Verizon, Marvin received certain employee benefits, including a group life insurance policy, governed by ERISA. Marvin's group life insurance policy was issued by defendant Prudential Insurance Company of America ("Prudential"). The policy provides:

### A. DEATH BENEFIT WHILE A COVERED PERSON

If you die while a Covered Person, the amount of your Employee Term Life Insurance under this Coverage is payable when Prudential receives written proof of death.

### B. DEATH BENEFIT DURING CONVERSION PERIOD

A death benefit is payable under this Section if you die:

(1) within 31 days after you cease to be a Covered Person, and

(2) while entitled (under Section C) to convert your Employee Term Life Insurance under this Coverage to an individual contract.

The amount of the benefit is equal to the amount of Employee Term Life Insurance under this Coverage you were entitled to convert. It is payable even if you did not apply for conversion. It is payable when Prudential receives written proof of death.

### C. CONVERSION PRIVILEGE

If you cease to be insured for the Employee Term Life Insurance of the Group Contract for one of the reasons stated below, you may convert all or part of your insurance under this Coverage, which then ends, to an individual life insurance contract. Evidence of insurability is not required. The reasons are:

3

>    (1)   Your employment ends or you transfer out of a Covered Class.
>
>    (2)   All term life insurance of the Group Contract for your class ends by amendment or otherwise. But, on the date it ends, you must have been insured for five years for that insurance (or for that insurance and any Prudential rider or group contract replaced by that insurance).
>
> Any such conversion is subject to the rest of this Section C.
>
> **Availability:** You must apply for the individual contract and pay the first premium by the later of:
>
>    (1)   the thirty-first day after you cease to be insured for the Employee Term Life Insurance; and
>
>    (2)   the fifteenth day after you have been given written notice of the conversion privilege. But, in no event may you convert the insurance to an individual contract if you do not apply for the contract and pay the first premium prior to the ninety-second day after you cease to be insured for the Employee Term Life Insurance.

Administrative Record at 44. Prudential is named as the claims administrator and has the sole discretion to interpret the terms of the contract, to make factual findings, and to determine eligibility for benefits.

Marvin was diagnosed with pancreatic cancer on September 21, 2005. At the time he was diagnosed, Marvin was employed full time by MCI. On October 8, 2005, Marvin was placed on short term disability leave. He was subsequently placed on long term

disability leave. On April 7, 2006, Marvin's employment with Verizon was terminated.[1] Marvin died on May 18, 2006, as a result of respiratory failure due to metastatic pancreatic cancer, 41 days after his employment was terminated. At the time of his death, Marvin had not exercised his conversion privilege under the group life insurance policy.

On June 20, 2006, Junelle's counsel submitted a letter to Prudential notifying Prudential that Marvin had not been given notice of his right to convert his group life insurance policy and that Junelle be granted conversion privileges. Counsel attached to the letter a group life insurance claims form completed by Carol Dunkel, a benefits administrator for Verizon. The claims form includes an entry stating that: "Conversion Privilege Offered (if available) 04-08-2006." Administrative Record at 5. On October 23, 2006, Prudential denied Junelle's claim for Marvin's life insurance based on its determination that Marvin was given notification of his conversion option on April 8, 2006, and had not exercised it to convert his group life insurance policy to an individual policy by May 8, 2006, thirty-one days after the termination of his employment. In its denial letter, Prudential states in pertinent part:

> We further understand from the employer that Mr. Hauth was notified of the right to convert by the employer. We are informed that the insured was given a severance package by his employer on or about 04/07/2006 and that the package contained the conversion notice and information on the conversion process. Please be advised that all further questions as to when the insured was notified of his conversion rights and the form of such notification must be directed to his employer.

Administrative Record at 16-17.

---

[1] While Marvin was on long term disability leave, MCI and Verizon merged.

Junelle sought an administrative appeal of Prudential's decision. On April 9, 2007, Prudential denied Junelle's administrative appeal, writing in pertinent part:

> According to our files, Marvin Hauth's employment ended April 7, 2006. Based on the Group Contract, his Basic Group Life Insurance coverage ended on that date. Further, there is no record that he applied for conversion of this coverage within the 31-day filing period. For these reasons we are denying this claim for Basic Group Life Insurance benefits.

Administrative Record at 20.

Through counsel, Junelle then filed a second administrative appeal of Prudential's decision on July 3, 2007. In this appeal, Junelle assumed, for the sake of argument, that Marvin received notification of his conversion option at or about the time he was terminated, but contended that by the time he received notice of his conversion option he was so ill from his cancer that he was unable to appreciate and understand the significance of it. During this second administrative appeal, an email from Len, last name unknown, in Prudential's legal department was sent to other Prudential staff concerning his review of the claims file and opinion regarding the merits of the second administrative appeal. With regard to the issue of whether Marvin was given notification of his conversion option, Len writes in pertinent part:

> The attorney [for Junelle] maintains that the former insured was not notified of his conversion option.
>
> Law is not in a position to check facts. We must assume the insured was timely notified. . .

Administrative Record at 28.

On August 7, 2007, Prudential denied Junelle's second administrative appeal, writing in pertinent part:

> We have thoroughly re-evaluated all documentation in file as well as the document received for the purpose of your appeal. After reviewing the information provided we have determined that our original decision to deny the claim was correct. Mr. Marvin Hauth's employment ended April 7, 2006. Mr. Hauth was given a severance package on or about April 7, 2006 and that package contained the conversion notice and information on the conversion process. There is no record that he applied for conversion of this coverage within the 31-day filing period.

Administrative Record at 34.

## *B. Procedural Background*

On May 5, 2008, Junelle filed her Complaint in this case, pursuant to 29 U.S.C. § 1132(a)(1)(B), against Prudential to recover benefits due under the terms of Marvin's life insurance policy. Junelle makes two claims in her Complaint. First, she asserts that Marvin did not receive written notice of his right to convert his group life insurance policy to an individual policy prior to his death. Second, Junelle contends, in the alternative, that if written notice of his right to convert his group life insurance plan was sent to Marvin, at that time he was incompetent to comprehend the notice or to take action to convert his group life insurance policy to an individual policy. Prudential filed a timely answer in which it admitted that it was subject to the provisions of ERISA but denied that Junelle is entitled to life insurance benefits. Pursuant to a scheduling order, an administrative record was filed and the parties then submitted briefs on the merits

## *II. LEGAL ANALYSIS*

Junelle's first claim, pursuant to 29 U.S.C. § 1132(a)(1)(B), is that Prudential erroneously concluded that Marvin received written notice of his right to convert his group

life insurance policy to an individual policy to deny her claim for Marvin's life insurance benefits. Prudential contends that substantial evidence supports its denial of benefits.

### A. Authority For A Civil Action

The provision of ERISA under which Junelle has brought her claim for denial of benefits provides as follows:

> **(a)** Persons empowered to bring a civil action
>
> A civil action may be brought—
>
> > **(1)** by a participant or beneficiary—
> >
> > > * * *
> > >
> > > **(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). As the Supreme Court has reiterated, this section of ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008).

### B. Standard of Review

The court reviews Prudential's decision for an abuse of discretion because the plan gives Prudential "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *see Rote v. Titan Tire Corp.*, ---F.3d---, 2010 WL 2925712, at *2 (8th Cir. July 28, 2010);

*Manning v. American Republic Ins. Co.*, 604 F.3d 1030, 1038 (8th Cir. 2010); *Darvell v. Life Ins. Co. Of N. Am.*, 597 F.3d 929, 934 (8th Cir. 2010); *LaSalle v. Mercantile Bancorporation, Inc. Long Term Disability Plan,* 498 F.3d 805, 808-09 (8th Cir. 2007). Under the abuse of discretion standard, "an administrator's decision is upheld if it is reasonable, that is, supported by substantial evidence." *Darvell*, 597 F.3d at 934; *see Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 580 (8th Cir. 2008). Substantial evidence is "'more than a scintilla but less than a preponderance.'" *Darvell*, 597 F.3d at 934 (quoting *Wakkinen*, 531 F.3d at 580); *see Rote*, ---F.3d---, 2010 WL 2925712, at *2; *Midgett v. Wash. Group Int'l Long Term Disability Plan* 561 F.3d 887, 897 (8th Cir. 2009). However, when the plan administrator is also the insurer, as Prudential is here, the administrator has a conflict of interest that must be weighed in determining whether the administrator abused its discretion. *Glenn,* 128 S. Ct. at 2346; *see Manning*, 604 F.3d at 1038; *Darvell*, 597 F.3d at 934. As the Eighth Circuit Court of Appeals explained recently in *Manning*:

> The significance of this factor depends on the circumstances of the particular case. [*Glenn,* 128 S. Ct. at 2346.] When an insurer has a history of biased claims administration, the conflict "may be given substantial weight." *Id.* When an insurer has taken steps to reduce the risk that the conflict will affect eligibility determinations, the conflict "should be given much less weight." *Id.*

*Manning*, 604 F.3d at 1039; *see Darvell*, 597 F.3d at 934.

Here, Prudential was both the evaluator of whether Marvin's life insurance was eligible for conversion and the entity responsible for paying life insurance benefits. The record contains no evidence about either Prudential's claims administrative history or its efforts to ensure that its claims assessment is not affected by its conflict of interest. Accordingly, the court gives the conflict some weight. *See Manning*, 604 F.3d at 1039

9

(concluding that where "[t]he record contains evidence of neither biased claims administration nor efforts to reduce the risk of such administration. . . like in *Darvell v. Life Ins. Co. of North America,* 597 F.3d 929, 934 (8th Cir. 2010), the court gives the conflict some weight.").

*C. Analysis*

It is undisputed that Marvin was an employee of MCI/Verizon and was covered under a group life insurance policy issued by Prudential and governed by ERISA. It is further undisputed that under the terms of that group life insurance policy, there is a death benefit during the policy's conversion period. The policy's conversion provision provides:

> **C. CONVERSION PRIVILEGE**
>
> If you cease to be insured for the Employee Term Life Insurance of the Group Contract for one of the reasons stated below, you may convert all or part of your insurance under this Coverage, which then ends, to an individual life insurance contract. Evidence of insurability is not required. The reasons are:
>
> (1) Your employment ends or you transfer out of a Covered Class.
>
> (2) All term life insurance of the Group Contract for your class ends by amendment or otherwise. But, on the date it ends, you must have been insured for five years for that insurance (or for that insurance and any Prudential rider or group contract replaced by that insurance).
>
> Any such conversion is subject to the rest of this Section C.

> **Availability:** You must apply for the individual contract and pay the first premium by the later of:
>
> (1) the thirty-first day after you cease to be insured for the Employee Term Life Insurance; and
>
> (2) the fifteenth day after you have been given written notice of the conversion privilege. But, in no event may you convert the insurance to an individual contract if you do not apply for the contract and pay the first premium prior to the ninety-second day after you cease to be insured for the Employee Term Life Insurance.

Administrative Record at 44.

The parties do not dispute that Marvin did not exercise his right of conversion before he died on May 18, 2006. The central issue here is whether Marvin received written notice of his right of conversion, as guaranteed under the terms of his group life insurance policy, before he died. Junelle contends that Marvin did not receive written notice of his conversion rights before he died. Accordingly, Junelle argues that Marvin's conversion period did not expire before his death since the conversion period would not run until July 8, 2006, the ninety-second day after he ceased to be insured. Prudential, on the other hand, asserts that Marvin received such notice on April 8, 2006. As a result, Prudential argues that Marvin's conversion period expired on May 8, 2006, which is the later of thirty-one days after his April 7, 2006, termination, or fifteen days after he received written notice of his conversion rights.

In support of its position, Prudential directs the court exclusively to a group life insurance claims form completed by Carol Dunkel, a benefits administrator for Verizon, as evidence that Marvin received notice of his conversion rights. The claims form includes an entry stating that: "Conversion Privilege Offered (if available)  04-08-2006."

Administrative Record at 5. Junelle answers that this entry on the claim is conclusory and does not provide any relevant information on what, if any, notice was given to Marvin. Junelle points out that the claims form fails to indicate how or in what manner the notice was given, by whom, what form it took, how it was delivered, and whether the information contained in the notice contained sufficient information to permit Marvin to exercise his conversion option. Junelle argues that this case is analogous to the Fourth Circuit Court of Appeals's decision in *Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d 231 (4th Cir. 1999).

In *Lebowitz,* the insured was a senior attorney covered by his law firm's group life insurance plan. The policy was governed by ERISA and underwritten by Canada Life. *Id.* at 233. The group life insurance policy required that the insured be given written notice of his right to convert the group policy to an individual policy. *Id.* at 233, 237. Specifically, the group life insurance policy provided that:

> "[The insured's law firm] will be required to give each person at least 15 days written notice prior to the date on which his right to convert would expire. If the person has not received such notice the person will have an additional 15 days from the date he is notified in which to convert. The life insurance coverage will not extend beyond the 31st day after the date the group insurance terminates, and the right to convert will not extend more than 60 days beyond the initial 31 day conversion period."

*Id.* at 237-38. The policy further stated that coverage ended "'[o]n the last day of the month in which the person's employment terminates.'" *Id.* at 238. The insured subsequently resigned from his law firm at the end of September 1995, to take a position with another law firm. *Id.* at 234. Before he left his old law firm, the law firm's human resources manager conducted an exit interview with the insured. During this exit

12

interview, the human resources manager discussed with the insured attorney how his quitting would affect his group health and life insurance coverage. *Id*. She advised the insured that he would not be covered as of October 1, 1995, and that he had 30 days after that date to convert his group life insurance into an individual policy. *Id*. She also gave the insured a blank "Group Conversion Application" and told him that he must complete the application and pay the necessary premium to exercise his life insurance right of conversion. On the top of this application, under the heading "Important," in 9-point type, were the following words, "Please remit the completed form and required premium to the address shown above, within 31 days from the date your coverage under the group policy terminated." *Id*. at 234-35. The insured died on November 4, 1995, without exercising his right to convert the group life insurance policy to an individual policy. Canada Life brought suit seeking a declaration that the insured was not covered by the group life policy at the time of his death. The insured's estate filed a counterclaim for benefits. Both sides then sought summary judgment, which the district court granted in favor of the insured's estate. *Id*. at 235. The Fourth Circuit Court of Appeals affirmed, holding that the insured was not provided with adequate written notice of his right of conversion. *Id*. at 237. In reaching this conclusion, the court of appeals rejected Canada Life's argument that the purpose and spirit of the written notice provision was satisfied because the insured, as an experienced attorney, had received sufficient information from his exit interview and the policy's language to make an informed decision concerning conversion, observing:

> we must assume that without adequate written notice, Lebowitz was not aware of his life insurance right of conversion. A plan administrator must administer the provisions of a policy "consistently." Even if Lebowitz indeed possessed enough information to make an informed decision, notice must be given consistently and uniformly to all participants regardless of their personal experience or individual acumen.

13

*Id*. at 238 (citation omitted). The court of appeals also rejected Canada Life's argument that the group conversion application constituted sufficient notice, concluding:

> The conversion application cannot constitute written notice because it does not provide sufficient information. We rule that adequate written notice here must be in writing and explicitly include: (1) when the group coverage will expire, (2) when the right of conversion will expire, (3) the procedure to follow in order to convert the group policy into an individual policy, and (4) the amount of premium required to complete conversion. Since the conversion application did not provide this minimal information, it did not constitute "written notice" as required by the Policy.

*Id*. Thus, as a result of the insured not receiving adequate written notice, the court of appeals concluded that the conversion period was extended to December 30, 1995. *Id*. at 239. Since the insured died during the extended conversion, his estate was entitled to receive death benefits for the maximum amount of life insurance the insured was entitled to convert. *Id*.

The group life insurance policy here, like the policy in *Lebowitz*, required that Marvin be provided with "written notice of the conversion privilege." Administrative Record at 44. Although Prudential found that Marvin received such notice, the court concludes, from its review of the record, that Prudential's finding is not supported by substantial evidence. Significantly, no document purporting to be the actual written notice provided to Marvin exists in the administrative record. Nor is there any document alleged to be a copy of such written notice. Because of the total absence of such documentation in the record, no reasonable person *could* have found precisely what, if any, writing concerning his conversion rights was provided to Marvin. *See Midgett v. Washington Group Int'l Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009) (whether an

administrator's decision was reasonable depends upon whether a reasonable person *could* have reached a similar decision, not whether a reasonable person *would* have reached that decision). As a direct consequence, no reasonable person could have ascertained whether any writing given to Marvin provided him with sufficient information to constitute written notice. As noted above, in *Lebowitz,* the court of appeals held that in order for a written notice of a conversion right to be adequate such notice must:

> explicitly include: (1) when the group coverage will expire, (2) when the right of conversion will expire, (3) the procedure to follow in order to convert the group policy into an individual policy, and (4) the amount of premium required to complete conversion.

*Estate of Lebowitz*, 185 F.3d at 238. Here, the complete absence in the administrative record of any document purporting to be a writing given to Marvin regarding his conversion privilege utterly precludes a reasonable person from concluding that Marvin received a writing which meets these four requirements for adequate written notice of his conversion rights.

Common sense would further lead a reasonable person to conclude that Marvin never received written notice of his conversion rights. It is undisputed that at the time his employment was terminated, Marvin was extremely ill with terminal pancreatic cancer. There is no logical reason a person in Marvin's tragic situation would not seek to convert his group life insurance policy to an individual policy if they were given adequate notice of their right to do so. Thus, the common sense inference to be drawn from Marvin's failure to convert his group life insurance policy by May 8, 2006, is that he never received notice of that option prior to his death.

Prudential's reliance on the group life insurance claims form completed by Dunkel

does not alter these conclusions. To the contrary, the conclusory nature of the entry on the claims form raises far more questions than it answers. The claims form includes only the cryptic entry that: "Conversion Privilege Offered (if available) 04-08-2006." Administrative Record at 5. As a result, the claims form fails to indicate whatsoever the manner in which notice of his conversion privilege was supposedly given to Marvin. Significantly, the claims form does not mention anything about the conversion privilege being offered in writing. An oral notification would be insufficient. As the Fourth Circuit Court of Appeals held in *Lebowitz*, the plain meaning of "written notice" requires "something in *writing. . .*" *Id*. Thus, the claims form does not even provide a scintilla of evidence that Marvin was informed of his conversion privilege in writing. Moreover, the claims form provides no details by which a reasonable person could ascertain that the information provided Marvin was sufficient to constitute adequate written notice of his conversion privilege. Indeed, given the complete lack of any supporting evidence in the record to substantiate the claims form's entry regarding a conversion privilege being offered to Marvin and considering the substantial number of forms the court has come across in the past that were incorrectly filled out, the court is unwilling to conclude that this lone, unsubstantiated claims form was correctly filled out.

Therefore, the court finds that Marvin was not provided with written notice of his right of conversion prior to his death, and Prudential's decision to the contrary is not supported by even a scintilla of evidence, and is, thus, arbitrary, capricious, and an abuse of discretion. *See Darvell*, 597 F.3d at 934; *Midgett*, 561 F.3d at 897; *Wakkinen*, 531 F.3d at 580. Since Marvin's employment at Verizon was terminated on April 7, 2006, and he was never given written notice of his conversion privilege, his conversion period extended to

the ninety-second day after he ceased to be insured, which was July 8, 2006. Since Marvin died within the conversion period, Junelle is entitled to receive Marvin's $74,000 death benefit from Prudential.

### III.  CONCLUSION

For the reasons discussed above, the court reverses Prudential's decision to deny plaintiff Junelle Hauth life insurance death benefits on the life Marvin Hauth and orders defendant Prudential to pay Junelle Hauth $74,000 in death benefits, plus interest. Judgment shall enter accordingly.

**IT IS SO ORDERED.**

**DATED** this 10th day of August, 2010.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA